# STATE OF MICHIGAN

# COURT OF APPEALS

MAEDER BROTHERS QUALITY WOOD
PELLETS, INC.,

UNPUBLISHED
April 14, 2015

Plaintiff-Appellant,

v

No. 320362
Saginaw Circuit Court

HAMMOND DRIVES & EQUIPMENT, INC.,

LC No. 13-018549-CK

Defendant-Appellee.

Before: OWENS, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted) and MCR 2.116(C)(10) (no genuine issue of material fact) in this breach of contract and warranties case. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff purchased a Bliss Pellet Mill in 2006 and second mill in 2008. The machine is used to transform sawdust and wood chips into pellets that are marketed for heating and power purposes. The mechanics of both machines required the use of bearings. The written information that the mill manufacturer provided to plaintiff directed it to use "Timken" bearings. Neither plaintiff's president, Richard Maeder, nor its secretary and general manager, Christi Densmore, could recall if the manufacturer's instructions stated to only use Timken bearings. Because the bearings would wear out approximately every 90 days, plaintiff constantly needed to purchase replacements. The parties stipulated that the cost to plaintiff of purchasing replacement Timken bearings was approximately $40,000 a year.

Looking to cut costs, plaintiff, through Densmore, inquired of defendant if it could find a cheaper bearing that could also do the job consistent with the Timken bearing. Densmore acknowledged that when she made this request she merely provided defendant with the part number and gave defendant no further technical specifications. Densmore stated that when ordering bearings and other parts from defendant in the past, she also had merely provided the part number. The replacement bearing that defendant provided to plaintiff was manufactured by a company other than Timken. Densmore acknowledged that the substitute bearing operated

-1-

consistently with the Timken bearings at first. However, plaintiff soon began to experience problems that resulted in substantial damage to both pellet mills. A subsequent investigation revealed that the substitute bearings were the cause of this damage because they were made of softer steel than the Timken bearings.

Neither Densmore nor Maeder recalled any written contract regarding the purchase of substitute bearings or any other express statement or writing from defendant on how they would perform. Maeder further acknowledged that he did not know if defendant's representative who handled the purchase had any specialized background or expertise in bearings. He acknowledged that defendant was not a manufacturer, but simply a distributor.

Plaintiff filed a four count complaint alleging breach of contract, negligence, breach of implied warranty, and breach of express warranty. While the complaint did not specifically state that the claims were based on Michigan's version of the Uniform Commercial Code (UCC), the complaint clearly shows that the substance of the allegations concerned a dispute over the commercial sale of bearings, which are considered a" good" under the UCC.

Defendant moved for summary disposition, arguing that plaintiff failed to plead the existence of a contract and that the deposition testimony of Maeder and Densmore showed no express warranty existed. Defendant also argued that plaintiff's negligence claim was barred by the economic loss doctrine, while the implied warranty claim was barred by portions of Michigan's product liability law. In plaintiff's response it alleged that its express and implied warranty counts were governed by the UCC. At the hearing on defendant's motion, defendant claimed that plaintiff could not argue that the UCC applied because plaintiff did not specifically mention the UCC in its complaint.

The trial court granted defendant's motion for summary disposition on all counts of plaintiff's complaint. On plaintiff's breach of contract claim, the trial court determined that the complaint failed to allege the existence of a contract or, in the alternative, that Maeder testified that no written contract existed. On plaintiff's negligence claim, the trial court determined that the economic loss doctrine precluded plaintiff from asserting a tort action when it sought to recover only economic damages. On plaintiff's express warranty claim, the trial court granted the motion because it determined that both Maeder's and Densmore's deposition testimony showed that no express warranty was ever made. Finally, the trial court granted summary disposition on plaintiff's implied warranty claim because it determined that plaintiff failed to plead a UCC claim or, in the alternative, because plaintiff failed to establish the elements of either of the two types of UCC implied warranties.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's grant of summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

## III. ANALYSIS

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Id.* at 119. The plaintiff's factual allegations are accepted as true and the motion may only be granted

where "no factual development could possibly justify recovery." *Id.* "[C]onclusory statements that are unsupported by allegations of fact on which they may be based will not suffice." *State v CVS Caremark Corp*, 496 Mich 45, 63; 852 NW2d 103 (2014). The court must also accept all reasonable inferences that can be drawn from the factual allegations as true. *Id.* "MCR 2.116(I)(5) requires that if summary disposition is appropriate under MCR 2.116(C)(8) . . . plaintiffs shall be given the opportunity to amend their pleadings, unless the amendment would be futile." *Granam v Does*, 303 Mich App 522, 543; 845 NW2d 128 (2014).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. The court considers affidavits, pleadings, depositions, admissions, and other evidence in a light most favorable to the non-moving party. *Id.* "In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Then the burden shifts to the party opposing the motion "to establish that a genuine issue of disputed fact exists." *Id.* "A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10)." *Maiden*, 461 Mich at 121. It is necessary to "set forth specific facts at the time of the motion showing a genuine issue for trial." *Id.*

"Michigan is a notice-pleading state." *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011). A complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend." MCR 2.111(B)(1). "[I]t is well settled that [courts] will look beyond mere procedural labels and read the complaint as a whole when ascertaining the exact nature of a plaintiff's claims." *Johnson*, 292 Mich App at 368.

Michigan's adopted version of Article 2 of the UCC, MCL 440.2102 *et seq.*, governs the transactions of sale of goods. "[W]here a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC . . . ." *Neibarger v Universal Coops*, 439 Mich 512, 527-528; 486 NW2d 612 (1992). There is no dispute that the present controversy involves the sale of goods.

In the present case, the court placed great emphasis on the fact that plaintiff did not specifically mention the UCC in its complaint, and defendant again argues this point on appeal. Although true, plaintiff's complaint does state that the dispute is over bearings it purchased from defendant. Thus, defendant was on notice that it was being sued by an entity to which it sold goods and that the subject matter of the suit involved the sale of those goods. This provided sufficient notice for defendant to know that the case would be governed by Article 2 of the UCC.

## A. PLAINTIFF'S NEGLIGENCE CLAIM

Plaintiff states an issue regarding the court's conclusion that its negligence claim is barred by the economic loss doctrine but he provides no substantive argument, thereby abandoning it. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). In any event, plaintiff's claim is barred by the economic loss doctrine. Where "claims arise from a commercial transaction in goods and the plaintiff suffers only economic loss . . . such claims are

barred by the economic loss doctrine." *Neibarger*, 439 Mich at 520. In the present case it is clear that plaintiff purchased the bearings for use in a commercial pellet manufacturing operation. The allegations in its complaint are that the product did not perform as expected and that plaintiff suffered economic losses as a result. Plaintiff's remedy, if any, lies exclusively in contract under the UCC; it cannot obtain a duplicative remedy in tort. *Id.* at 527-528.

## B. PLAINTIFF'S BREACH OF CONTRACT CLAIM

Again, because plaintiff's complaint clearly states that it involves a commercial purchase of goods, it is governed by the UCC. *Id.* at 527-528. Under the UCC, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." MCL 440.2204. Contracts for the sale of goods where the price is $1,000 or greater are not enforceable unless there is a "writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." MCL 440.2201(1). However a contract that does not satisfy the writing requirement is enforceable "[w]ith respect to goods for which payment has been made and accepted or that have been received and accepted under" MCL 440.2606. MCL 440.2201 (3)(c). "[A]n order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt shipment of conforming or nonconforming goods." MCL 440.2206(1)(b). "Where the buyer has accepted goods and given notification ([MCL 400.2607(3)]) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach . . . ." MCL 440.2714(1).

Defendant argues that no contract existed between the parties "beyond a mere sale of parts." Plaintiff alleged that it requested to purchase from defendant bearings that could do the same job as the Timken bearings but that would cost less, that defendant then delivered bearings to plaintiff, but that these bearings could not do the job of the Timken bearings. If these allegations were proven with admissible evidence, they would be sufficient to show that a contract for the sale of goods existed between plaintiff and defendant for the purchase of bearings that would perform as well as Timken bearings, and that defendant breached the contract by delivering bearings that did not do so. Therefore, to the extent the trial court granted defendant's motion for summary disposition on plaintiff's breach of contract count pursuant to MCR 2.116(C)(8), it committed error.

However, with respect to defendant's motion under MCR 2.116(C)(10), defendant attached the deposition of Densmore, who testified that when she ordered the bearings from defendant she merely provided defendant with the part number. Densmore also testified that the replacement bearings plaintiff received from defendant operated consistently with the Timken bearings at first. That the bearings subsequently failed shows, at most, that their quality, in terms of longevity, was inferior. This is not a breach of contract and is at most a breach of warranty if one existed. For the reasons explained below, however, no express or implied warranty existed in this case.

Because defendant presented evidence that demonstrated it did not breach its contract with defendant and because plaintiff failed to present any rebutting evidence, the trial court

-4-

properly granted defendant's motion with respect to plaintiff's breach of contract claim pursuant to MCR 2.116(C)(10).

## C. PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM

An express warranty is created by "[a]n affirmation of fact or promise made by the seller," by "[a] description of the goods," or by "[a] sample or model which is made part of the basis of the bargain." MCL 440.2313(1). Both Maeder and Densmore testified that neither defendant nor any representative of defendant ever made any express statement to them about how long the substitute bearings would last or what type of steel the bearings were made of. Plaintiff presented no admissible evidence to contradict this. While plaintiff argued that an express warranty existed, it merely attached four pages from Maeder's deposition to its response to defendant's motion, on which we do not find any admissible evidence that any affirmation of fact or promise was made to him by defendant. Therefore, the trial court did not err in granting defendant's motion for summary disposition under MCR 2.116(C)(10) with respect to plaintiff's breach of express warranty claims.

## D. PLAINTIFF'S BREACH OF IMPLIED WARRANTY CLAIM

The UCC describes two types of implied warranties. The first is the implied warranty of merchantability. MCL 440.2314. The second is the implied warranty of fitness for a particular purpose. MCL 440.2315. Plaintiff's complaint does not specify which implied warranty forms the basis of its claim, but it referred to both types in its response to defendant's motion for summary disposition.

## 1. IMPLIED WARRANT OF MERCHANTABILITY

"[A] warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." MCL 440.2314(1). " 'In general the question whether a party may be a merchant as that term is used in the UCC is a question of law for the courts to decide by applying the UCC definition of merchant to the facts in the case.' " *Bev Smith, Inc v Atwell*, 301 Mich App 670, 681; 836 NW2d 872 (2013) (citation omitted). A merchant is defined as "a person that deals in goods of the kind or otherwise by the person's occupation holds itself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." MCL 440.2104. The official comments provide further guidance on the definition of a merchant for purposes of the implied warranty of merchantability:

> [I]n Section 2-314 on the warranty of merchantability, such warranty is implied only "if the seller is a merchant with respect to goods of that kind." Obviously this qualification restricts the implied warranty to a much smaller group than everyone who is engaged in business and requires a professional status as to particular kinds of goods. . . . [MCL 440.2104, UCC comment 2.]

Plaintiff alleged that defendant "is engaged and has continuously engaged at all times relevant to this lawsuit in the business of buying, selling, distributing and handling parts of all kinds for power transmissions, hydraulic and pneumatic systems and materials for all types of drives and equipment." Accepting this allegation as true and all reasonable inferences that can

be drawn from it, plaintiff has alleged that defendant does "deal[] in goods of the kind or otherwise by the person's occupation holds itself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." MCL 440.2104. Although the term "bearings" is not used, the allegation was that defendant is the seller of "parts of all kinds" for machines like plaintiff's Bliss Pellet Mill, which would include the bearings in issue. Therefore, to the extent the trial court granted defendant's motion for summary disposition on plaintiff's implied warranty of merchantability claim under MCR 2.116(C)(8) it committed error.

However, a motion for summary disposition under MCR 2.116(C)(10) requires more than just an allegation in the complaint. It is a factual test of the allegation and requires the plaintiff to produce admissible evidence that would support the allegations. *Maiden*, 461 Mich at 120. Again, nothing in the pages of Maeder's deposition submitted by plaintiff to the court provides any type of evidence or even any assertion that defendant is a merchant, i.e., a person that deals in bearing or holds itself out to have knowledge or skill in bearings. Indeed, Maeder testified that he did not know if defendant's representative was an expert or what his background in bearings was. Therefore, the trial court properly determined that defendant was entitled to summary disposition under MCR 2.116(C)(10) to the extent that plaintiff's claim addressed the implied warranty of merchantability.

## 2. IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

MCL 440.2315 provides as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Regarding defendant's motion for summary disposition under MCR 2.116(C)(8), the question is whether plaintiff pleaded facts in its complaint that if proven true would establish both that defendant had reason to know of the particular purpose plaintiff was to use the bearing for and that defendant had reason to know that plaintiff was relying on defendant's skill or judgment to select a suitable bearing. Plaintiff does allege that it purchased bearings from defendant in the past and that it asked defendant to select a cheaper bearing that could do the job. If proven true, this would establish that defendant had knowledge of the purpose for which plaintiff would use the bearings.

However, in order for the warranty of fitness for a particular purpose to apply, plaintiff was also required to plead facts that, if true, would establish that defendant had knowledge that plaintiff was relying on defendant's skill and judgment. Plaintiff does allege that the substitute bearings were provided "with the affirmative statement and promise by [defendant] to [plaintiff] that these bearings would perform the same function in the same manner as Timken roller bearings, but at less cost." However, all this alleges is that defendant made an express warranty to plaintiff. It does not allege that defendant had reason to know that plaintiff was relying on defendant's expertise. Nowhere in plaintiff's complaint does it allege that defendant had reason to know plaintiff was relying on its skill and expertise in bearings.

-6-

Additionally, it is questionable whether the implied warranty of fitness for a particular purpose would even apply to a situation like the present case, where the buyer was using the goods for the ordinary purpose for which they were intended. The comments to the UCC's implied warranty of fitness for a particular purpose state:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. . . . [MCL 440.2315, UCC comment 2.]

There is nothing in plaintiff's complaint or in the depositions that would suggest that plaintiff intended to use the bearings for something other than the ordinary purpose for which such bearings were used. Thus, to the extent plaintiff's implied warranty count is based on the implied warranty of fitness for a particular purpose, the trial court correctly granted summary disposition under MCR 2.116(C)(8).

Affirmed. Defendant, having prevailed on appeal, may tax its costs pursuant to MCR 7.219.

/s/ Donald S. Owens
/s/ Kathleen Jansen
/s/ Christopher M. Murray