**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0001n.06

Case No. 18-1120

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| 679637 ONTARIO LTD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ALPINE SIGN AND PRINTER SUPPLY, | ) | MICHIGAN |
| INC, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| MARABU NORTH AMERICA, LP, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

⬡ **FILED**
Jan 04, 2019
DEBORAH S. HUNT, Clerk

BEFORE: MERRITT, COOK, and LARSEN, Circuit Judges.

**COOK, Circuit Judge.** This case concerns a contract dispute over a defect in laminate used to protect truck tarps. On appeal, we must decide the sole question of whether the plaintiff, 679637 Ontario Ltd., provided timely notice to defendant Marabu North America, LP of an alleged breach of warranty caused by the defective laminate. Because we agree with the district court that no reasonable factfinder could conclude that Ontario timely notified Marabu of the defect, we AFFIRM its grant of summary judgment.

## I.

Ontario manufactures large tarpaulin systems printed with advertisements that customers affix to the sides of tractor trailer trucks. During manufacturing, it applies industrial laminate to the tarps to shield them from the environment and to facilitate cleaning. In 2010, Ontario began purchasing laminate from a new supplier, Clearstar LP, Marabu's predecessor company.

Shortly thereafter, in the fall of 2011, Ontario began to receive customer complaints about dirty and hard-to-clean tarps. While Ontario continued to receive "occasional" complaints in 2012 and 2013, the company claims that the number of complaints "sky rocketed" in the spring of 2014. Only then did it begin to investigate the source of the problem and, after a few weeks of testing, determine that Marabu's laminate caused the tarps to trap and retain dirt. On September 5, 2014, Ontario notified Marabu and asked for its help to clean the tarps. The company continued to purchase Marabu's laminate until early 2015.

Over a year later, Ontario sued Marabu and its distributor, Alpine Sign and Printer Supply, Inc.[1] As relevant here, Ontario argued that Marabu's laminate breached the implied warranty of merchantability. The district court rejected Ontario's claim under Michigan's Uniform Commercial Code ("U.C.C.") because the company failed to provide notice of the alleged defect to Marabu within a reasonable time. *See* Mich. Comp. Laws § 440.2607(3). It found that the clock for calculating reasonable notice started running for the purposes of section 440.2607(3) in the fall of 2011 when Ontario received its first customer complaints. Because Ontario waited nearly three years to notify Marabu of the problem, the district court held that no reasonable factfinder could conclude that the delay was reasonable and awarded summary judgment to Marabu.

---

[1] After Ontario filed this appeal, Alpine and Ontario settled. Alpine therefore no longer remains a party to this appeal.

**II.**

This appeal asks whether the district court properly granted summary judgment to Marabu based on its finding that Ontario failed to timely notify Marabu of the defective laminate. We review an order granting summary judgment de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002). The moving party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor." *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999).

Michigan's U.C.C. requires that after acceptance of goods, a buyer must notify the seller of any breach "within a reasonable time after he discovers or should have discovered [the] breach . . . or be barred from any remedy." Mich. Comp. Laws § 440.2607(3)(a). Whether the passage of time proves reasonable "depends on the nature, purpose, and circumstances of the action." § 440.1205(1); *see also Kelynack v. Yamaha Motor Corp.*, 394 N.W.2d 17, 20 (Mich. Ct. App. 1986). Generally, the trier of fact determines whether a reasonable time has elapsed. *Moore v. First Sec. Cas. Co.*, 568 N.W.2d 841, 845 (Mich. Ct. App. 1997). "If reasonable minds could not differ, however, the question of what constitutes a reasonable time should be decided on summary disposition as a matter of law." *Bev Smith, Inc. v. Atwell*, 836 N.W.2d 872, 879 (Mich. Ct. App. 2013) (citing *Comput. Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 58 (Mich. Ct. App. 2005)).

Ontario concedes that it received its first complaints about dirty tarps in 2011, but it argues that the district court erred in finding that it knew or should have known about Marabu's breach at that time. It classifies the early complaints about hard-to-clean tarps as isolated "symptoms" and

contends that it discovered the cause of the problem only after the explosion of customer complaints in the spring of 2014.

Even accepting Ontario's distinction between awareness of symptoms and awareness of the underlying cause, Michigan's U.C.C. still bars this implied warranty claim because the statute requires that the buyer notify the seller within a reasonable time after he "should have discovered" the breach. *See* § 440.2607(3)(a). Although Ontario fails to discuss in detail the progression of complaints from the fall of 2011 to early 2014, it acknowledges that the onset occurred in 2011. R. 1, Compl., PageID 5 ("Beginning in the fall of 2011, customers of [Ontario] . . . began to complain that the printed panels laminated with [Marabu's laminate] absorbed dirt and could not be cleaned."). In addition, its brief admits that it continued to receive complaints about the tarps in 2012 and 2013. These several complaints should have alerted Ontario to the defect in the laminate well before 2014. On this, reasonable minds could not differ.

As the Michigan Court of Appeals' decision in *Bev Smith* illustrates, the time at which a buyer "could have discovered [a breach] . . . by means of an inspection or an expert appraisal," informs when he "should have discovered" the breach under section 440.2607(3)(a). 836 N.W.2d at 881–82 (affirming dismissal of an aggrieved purchaser's claim). While reasonableness depends on the nature and circumstances of each individual case, *see Kelynack*, 394 N.W.2d at 20, Ontario's own actions demonstrate that it could have discovered the laminate defect much earlier had it pursued finding the cause in 2011 and 2012. Indeed, within weeks of its decision to investigate the problem's origin in May 2014, it determined that Marabu's laminate trapped and retained dirt. Thus, the district court correctly held that reasonable minds could not differ in finding Ontario's tardy notice to Marabu in September 2014 unreasonable under section 440.2607(3).

Finally, as the district court pointed out, this result accords with the purposes of section 440.2607(3)'s notice requirement. The Michigan Court of Appeals has summarized these purposes as follows: "(1) to prevent surprise and allow the seller the opportunity to make recommendations . . . , (2) to allow the seller the fair opportunity to investigate and prepare for litigation, (3) to open the way for settlement of claims through negotiation, and (4) to protect the seller from stale claims and provide certainty in contractual arrangements." *Am. Bumper & Mfg. Co. v. Transtechnology Corp.*, 652 N.W.2d 252, 256 (Mich. Ct. App. 2002). Ontario's delay in notifying Marabu of the breach frustrated each of these purposes and allowed added damages to accrue, further supporting the conclusion that reasonable minds could not disagree that section 440.2607(3) bars the implied warranty claim.

### III.

We AFFIRM the district court's grant of summary judgment to Marabu.

**MERRITT, Circuit Judge, dissenting.** The only issue on appeal is whether the district court properly granted summary judgment to Marabu on Ontario's implied warranty claim concerning Marabu's Clear Shield Star 1020 LL laminate because Ontario failed to provide reasonable notice of a breach of the implied warranty under Section 2-607 of the Uniform Commercial Code. Mich. Comp. Laws § 440.2607(3)(a) ("Where a tender has been accepted . . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy."). Whether a reasonable time has elapsed is generally a question for the trier of fact. *Moore v. First Sec. Cas. Co.*, 568 N.W.2d 841 (Mich. Ct. App. 1997). "If reasonable minds could not differ, however, the question of what constitutes a reasonable time should be decided on summary disposition as a matter of law." *Bev Smith, Inc. v. Atwell*, 836 N.W.2d 872, 879 (Mich. Ct. App. 2013) (citing *Comp. Network, Inc. v. AM Gen. Corp*, 696 N.W.2d 49 (Mich. Ct. App. 2005)). "Whether a time for taking an action . . . is reasonable depends on the nature, purpose, and circumstances of the action." Mich. Comp. Laws § 440.1205(1); *see also Kelynack v. Yamaha Motor Corp., USA*, 394 N.W.2d 17, 20 (Mich. Ct. App. 1986).

Marabu maintains that Ontario waited an unreasonable time— nearly three years— before notifying Marabu of the allegedly defective laminate and it is barred from any recovery as a matter of law by Section 2-607. Mich. Comp. Laws § 440.2607(3)(a) (Failure to timely notify seller bars the buyer "from any remedy."). Marabu relies solely on Ontario's representation in its complaint that "[b]eginning in the fall of 2011, customers of [Ontario] . . . began to complain that the printed panels laminated with Clear Shield Star 1020 LL absorbed dirt and could not be cleaned" to argue that Ontario discovered or should have discovered any alleged breach concerning the laminate in the fall of 2011, and that is when the clock started running in determining whether Ontario notified

Marabu of a defect in the laminate within a "reasonable time" for purposes of Mich. Comp. Laws § 440.2607(3).

Marabu argues that Ontario did not meet its burden to give factual support below for its claim that it didn't know about the problem with the laminate until May 2014. Mich. Comp. Laws § 440.2607(4) ("The burden is on the buyer to establish any breach with respect to the goods accepted."). Ontario concedes that it received its first complaint in the fall of 2011, but it did not "discover" the cause of the problem until at least May 2014. Ontario contends that the defective nature of the laminate could not have been determined earlier because the laminate had to be applied to the tarps and exposed to the environment for a period of time before the problem would manifest. Based on the dramatic rise in complaints in 2014, Ontario employee James Martel prepared a "Project Report" in late spring 2014 to help investigate and identify the cause of the dirt-retention problem with the tarps. *See* Exhibit E to Ontario's Supplemental Brief in Response to Marabu's Summary Judgment Motion. The report confirms that the first complaint of excessively dirty tarp panels was made by a Nebraska customer in the fall of 2011. The report does not document any complaints of uncleanable or excessively dirty tarps during the period 2012 to 2014, thereby creating a genuine issue of material fact as to when Ontario "discovered or should have discovered" that the laminate was defective. In addition, Martel submitted an affidavit identifying the time frame in which Ontario became aware that the laminate itself was causing the problem with the dirt-retention:

> Shortly after I started [working at Ontario] in May of 2014, [m]any [Ontario] customers began to complain about dirty and uncleanable tarpaulins. We made several attempts to clean dirty tarps and to assist customers to clean dirty tarps, all of which were unsuccessful, prompting us to call Marabu in September 2014 to inform them of the problem and ask for their assistance.

Martel Aff. ¶ 4. According to Ontario, it notified Marabu within three or four months of learning that the dirt retention problem was caused by Marabu's laminate.

The notice provision of Section 440.2607(3) requires the buyer to give notice to the seller "within a reasonable time" after he discovers any *breach*. The district court erroneously relied on only one isolated fact from the record to find that Ontario discovered the breach in the fall of 2011: Ontario's complaint where it alleged that the first customer complaint came in the fall of 2011. The district court and our Court's analysis does not go far enough in examining the "discovered or should have discovered" requirement under Mich. Comp. Laws § 440.2607(3)(a). The district court did not give adequate weight to Ontario's evidence in the report and in the Martel Affidavit that customer complaints increased dramatically in 2014. This evidence created a genuine issue of material fact as to whether Ontario waited too long to investigate and discover that the underlying cause of the dirty tarps was the laminate. The district court failed to take into consideration the "nature, purpose, and circumstances" of any action or lack of action on the part of Ontario when it relied on one complaint in the fall of 2011 to serve as the discovery date for the alleged breach.

As Ontario demonstrated, it knew only of a *symptom* before May 2014, not a defect or breach. In 2014, complaints "skyrocketed" and Ontario was compelled to look more extensively into the matter because customers were demanding replacement of the tarps or compensation for the problem. The customer complaints standing alone did not give Ontario knowledge of the cause of the problem. Once it started looking for the cause and testing various components of its processes, it discovered the source. The question becomes when would a reasonably prudent buyer in Ontario's shoes have started to investigate the complaints in a manner that would lead to discovery of the breach or defect? One complaint about a dirty tarp in the fall of 2011 did not give

Ontario sufficient information that it "should have discovered" that Marabu's laminate was the cause of the problem and that a breach had occurred. The answer may lie somewhere between the parties' two extreme positions, but Ontario produced unrebutted evidence below that it received only one complaint in 2011 and numerous complaints in 2014. Contrary to the district court's finding, reasonable minds could differ as to whether Ontario's notice to Marabu in September 2014 came within a reasonable time after discovery of the alleged breach under Section 440.2607(3)(a). Thus, the factual issue should not be decided as a matter of law, but by the jury as a fact-finder.